**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HASAN SHAMERE SINGLETON | : | |
| | : | |
| Appellant | : | No. 3549 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 20, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006912-2018

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.: **FILED OCTOBER 30, 2020**

Appellant, Hasan Singleton, appeals from his judgment of sentence for, *inter alia*, one count of attempted trafficking in minors after he arranged for a minor to have sex for money with an undercover detective. In his sole issue on appeal, Appellant asserts that there was insufficient evidence to sustain the conviction for attempted trafficking in minors. We disagree, and affirm the judgment of sentence.

Both Appellant and the Commonwealth quote the trial court's recitation of the facts in their respective briefs and we do the same here. As the trial court recounted:

> Shortly prior to October 11, 2018, Appellant solicited [a minor,] T.P.[,] and propositioned her to perform sex acts for money. Appellant explained to her what each of their roles would be in the sex trafficking operation. He explained what she would be expected to do, and how the money would be shared between the two of them (60% going to her and 40% going to Appellant). T.P.

told Appellant her true age, which was seventeen years old. Appellant told T.P. that he would set up advertisements so that she could get dates, and he asked her to send him photographs of herself to post with the advertisement. At Appellant's request, T.P. sent him photographs of herself posing provocatively in a bra and underwear. Appellant then posted those photographs of T.P. in an advertisement on an escort website known for prostitution, called *Backpage*, or now known as *Backpage.Listcrawler*. The advertisement contained Appellant's phone number as the number to contact for T.P.'s services. T.P. did not ever see, nor did she place, the advertisement Appellant posted online.

On October 11, 2018, Appellant picked up T.P. at her house in Philadelphia for the purpose of transporting her so she could have sex for money. While they were in the car, Appellant received a call in response to the advertisement he placed related to T.P. He did not know at the time that the call was from Detective [John] Wright of the Upper Merion Police Department, who was conducting an undercover investigation of individuals involved in illegal prostitution activity in Montgomery County. As part of that investigation, Detective Wright located the advertisement depicting T.P. on *Backpage*. The Detective, acting undercover, contacted the phone number provided in the advertisement to arrange a meeting for the purpose of 'making a date for sex for money.' The phone number was later traced to Appellant.

Detective Wright communicated with T.P. and Appellant via phone call and text message. T.P. stated that she only communicated with Detective Wright via phone call, and that while speaking with him on the phone she was with Appellant and was not in control of the phone at any time. The text messages sent to the Detective were not sent by her. Upon first contacting the phone number, Detective Wright spoke with T.P. Detective Wright told her that he was interested in one hour of her services. They discussed pricing and explicit details of what types of things her services included. T.P. asked the Detective if he was involved in law enforcement, which he denied. The Detective told T.P. that he was at the Hyatt House Hotel in King of Prussia, Montgomery County. T.P. stated she would be bringing a male driver with her, but that he would just drop her off and would not accompany her to the hotel room.

After the initial set-up call, text messages were sent from Appellant's phone asking the Detective once again whether he was in law enforcement and asking him to 'send pic with money to

- 2 -

confirm.' The Detective stated that he did not work in law enforcement, and that he had to go to the A.T.M. The Detective then spoke to T.P. via phone call, which call was on speaker phone/blue tooth from within Appellant's vehicle. The nature of that conversation was that T.P. asked additional questions, and she asked the Detective to undress and appear naked in the room when she arrived. T.P. then asked the Detective to send a picture of the cash payment. The Detective sent a photograph of $250 U.S. currency, which was the amount quoted for an hour of services. T.P. asked for the room number, which the Detective provided as Room 225.

Detective Wright was inside the hotel room with Sergeant Brandy Faherty, also of the Upper Merion Police Department. In addition, Corporal Martin Menago and Detective Michael Laverty of the Upper Merion Police Department were conducting surveillance in the parking lot of the Hyatt House Hotel. At approximately 1:00 p.m., the Detectives in the parking lot observed a silver or gray car containing three occupants - Appellant, T.P. and one other male. Appellant was the driver of the vehicle. T.P. did not have any interactions with the other male in the car. The Detectives observed the female get out of the car from the front passenger seat, walk around the car to the driver's side to converse briefly with Appellant, and then enter the hotel.

At approximately 1:03 p.m., T.P. arrived at room 225 of the Hyatt House Hotel. She encountered Detective Wright and Sergeant Faherty. Detective Wright recognized T.P. as the female depicted in the advertisement from *Backpage*, and T.P. identified herself as the person depicted in the advertisement. The Detectives in the hotel room then called via police radio to Corporal Menago in the parking lot and directed him to stop the vehicle and detain the occupants, which he did. The vehicle was registered to Appellant. Inside the vehicle, Corporal Menago located a cell phone in the cup holder in the center console and an open box of condoms. Detective Wright dialed the phone number that he used to communicate with T.P. and Appellant, and the phone in the center console rang. T.P. was taken back to the police station where she gave a statement to police.

Detectives obtained a search warrant for the vehicle and executed a search of the vehicle. Detectives obtained the cell phone from the center console and learned that it belonged to Appellant. Appellant's name was assigned to the phone and the phone

contained several images of Appellant indicating that it was in fact his phone. In extracting data from Appellant's cell phone, police also confirmed that it was the phone used to initially communicate with T.P. prior to the incident on October 11, 2018. The search of the phone revealed the same images of T.P. that were used in the *Backpage* advertisement, confirming that those images were sent from T.P.'s personal cell phone to Appellant's phone. A forensic examination also revealed that Appellant posted the advertisement depicting T.P. on *Backpage*.

Trial Court Opinion, 2/20/20, at 3-7 (citations to notes of testimony omitted).

Appellant was arrested and charged with multiple offenses related to this incident. Following a bench trial, the trial court found Appellant guilty of one count of unlawful contact or communication with a minor, one count of promoting prostitution of a minor, and one count of attempted trafficking in minors. The court sentenced him to an aggregate term of six to 20 years' imprisonment. After Appellant's private counsel withdrew and the Montgomery County Public Defender's Office entered its appearance on behalf of Appellant, Appellant filed a timely notice of appeal. Appellant complied with the court's directive to file a 1925(b) statement of errors complained of on appeal, and the trial court issued a 1925(a) opinion in response.

On appeal, Appellant claims that the evidence was insufficient to sustain his conviction for attempted trafficking of minors. Appellant's argument in support of this claim is far from fully developed. He merely maintains, with no further explanation, that the evidence was insufficient to sustain the conviction because there was "no direct evidence presented that [he] knew or disregarded the substantial risk that [T.P.] would be subject to involuntary

servitude." Appellant's Brief at 7. In the first instance, it is arguable that this claim is waived for failure to properly develop it. **See Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments which are not sufficiently developed are waived). However, even if this claim was not waived, we agree with the trial court that it lacks merit.

Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived from the evidence are sufficient to establish all elements of the offense beyond a reasonable doubt. **See Commonwealth v. Blakeney**, 946 A.2d 645, 651 (Pa. 2008). The Commonwealth may sustain its burden entirely by circumstantial evidence and the fact-finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. **See Commonwealth v. Ramtahal**, 33 A.3d 602, 607 (Pa. 2011). When determining whether a defendant had the requisite intent to commit a crime, the fact-finder is also free to conclude that the defendant intended the natural and probable consequences of his actions. **See Commonwealth v. Holley,** 945 A.2d 241, 247 (Pa. Super. 2008).

To sustain a conviction for the attempt to commit a crime, the Commonwealth must show that the defendant, with the intent to commit a specific crime, does any act which constitutes a substantial step toward the commission of that crime. **See** 18 Pa.C.S.A. § 901(a). Section 3011(b) of the Pennsylvania Crimes Code criminalizes trafficking in minors. **See** 18 Pa.C.S.A.

§ 3011(b), *amended by* Act of Feb. 5, 2020, P.L.1, No. 1, § 1, effective in 60 days.[1] To that end, Section 3011(b) provides that a person "commits a felony in the first degree if the person engages in any activity listed in subsection (a) that results in a minor's [sic] being subjected to sexual servitude." ***Id***. Subsection (a), in turn, states that trafficking in individuals occurs when a person "recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude." ***Id***. at § 3011(a)(1).

"Sexual servitude" is defined as "any sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to or received by any individual or which is performed or provided by any individual and is induced or obtained from … [a] minor." ***Id***. at § 3001. Meanwhile, "[i]nvoluntary servitude" is defined as "[l]abor servitude or sexual servitude." ***Id***. As such, "involuntary servitude," which is referenced in Section 3011(b), incorporates "sexual servitude," which is referenced in subsection(a). The Commonwealth can therefore sustain a conviction under Section 3011(b) when it shows that the defendant knowingly or recklessly,

---

[1] The legislature passed an Act substantially amending 18 Pa.C.S.A. § 3011 on February 5, 2020, and those amendments became effective on April 6, 2020. ***See*** Act of Feb. 5, 2020, P.L. 1, No. 1, § 1, effective in 60 days. Because the offense in question took place on October 11, 2018 and therefore prior to those amendments, citations to the statute are to the version in effect at the time of Appellant's offense.

*inter alia*, recruited, enticed, solicited, or transported a minor for the purpose of sexual servitude, which includes the performance of a sex act for money.

Here, we agree with the trial court that there was sufficient evidence for it to find that Appellant attempted to traffic T.P. in violation of Section 3011(b). Appellant knew that T.P. was only 17 years old as T.P. told him that was her age when she first met him. Appellant explained to T.P. what each of their roles in the sex trafficking operation would be, and that he would take 40% of the money she earned by performing sex acts. He asked T.P. to send provocative pictures of herself, which Appellant posted on a website known for prostitution along with his phone number as a contact for T.P.'s services. Appellant then picked T.P. up at her house to transport her to a hotel to, in the words of T.P., "have sex with somebody for money." N.T., 5/28/2019, at 87.

Using Appellant's phone while in Appellant's car en route to the hotel, T.P. communicated with the "customer." She discussed details of their upcoming meeting, including what her sex services would and would not entail as well as payment details for those services. Appellant watched as T.P. got out of his car and went inside the hotel to meet the customer, who turned out to be an undercover detective. Once the police detained Appellant, they searched his car and found a box of condoms and a cell phone that had Appellant's name assigned to it as well as the number Detective Wright had called to set up the sexual encounter with T.P. The phone also contained the

photographs of T.P. that had been posted on *Backpage*. As the trial court found:

> Appellant's actions demonstrate that he took a substantial step toward the commission of this crime, as he transported T.P., knowing that she was a minor, to the hotel and watched her get out and go inside of that hotel knowing that it was for the sole purpose of committing a sexual act for money. Appellant planned, facilitated and controlled T.P.'s act of going into a hotel room to have sex for money. The evidence presented at trial was sufficient to prove, beyond a reasonable doubt, that Appellant committed the crime of attempted trafficking in minors and that he transported the individual knowing that the minor would be subject to involuntary servitude as defined in the statute.

Trial Court Opinion, 2/20/20, at 10.

We agree. While Appellant's sole complaint on appeal is that the Commonwealth did not present direct evidence of his intent to traffic T.P., no such direct evidence was required. Rather, our case law is clear that the Commonwealth may establish a defendant's intent by circumstantial evidence alone. *See Commonwealth v. Crawford*, 24 A.3d 396, 405 (Pa. Super. 2011) (stating that a defendant's state of mind can be, and often must be, established entirely by circumstantial evidence). As highlighted above, the Commonwealth presented more than enough circumstantial evidence here to support the conclusion of the trial court, as fact-finder, that Appellant had the requisite intent to sustain an attempted trafficking of minors conviction. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/20